UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RAYMOND PADILLA,<br><br>         Plaintiff,<br><br>  v.<br><br>OFFICER ROBERT KNICKERBOCKER, et al.,<br><br>         Defendants. | Case No. 2:20-cv-00066-KJD-VCF<br><br>**ORDER** |

  Presently before the Court is Defendants' Motion for Summary Judgment (#75). Plaintiff responded in opposition (#79), to which Defendants replied (#81). Plaintiff's pro se response also consisted of a Cross-Motion for Summary Judgment. (#79).

I.  Factual and Procedural Background

  On July 26, 2016, the North Las Vegas Police Department ("NLVPD") Dispatch received a report of gunshots heard in North Las Vegas. (#75-1). Several NLVPD officers responded to the area and spoke with the person reporting the gunshots, who advised them that immediately after he heard the gunshots, he saw an orange Chevy Avalanche with chrome rims leaving the area "in a hurry." Id. Defendant Officer Robert Knickerbocker ("Knickerbocker") began searching the area for the orange Avalanche and approximately nine minutes later, both he and Defendant Officer Daryl Reitz ("Reitz") witnessed a car that matched the description provided. Id. The officers performed a traffic stop and interacted with the driver, who was identified as Plaintiff Raymond Padilla ("Padilla"). Id.

  The officers discovered Padilla did not have a driver's license and in response, the officers asked Padilla to exit the vehicle and approach the front of Knickerbocker's patrol vehicle. Id. Padilla complied, and Knickerbocker performed a Terry frisk of Padilla. Id. The search did not

yield any results. Id. While Padilla was being frisked, Reitz performed a Terry search of Padilla's vehicle and located a black and silver semi-automatic handgun in the center console. Id.

Padilla was advised of his Miranda rights, which he responded he understood. Id. The officers detained Padilla with handcuffs while they conducted their investigation. Id. A records check of Padilla revealed no outstanding warrants but did reveal that he was previously convicted of a felony for robbery with a deadly weapon. Id. Knickerbocker then informed Padilla that he was under arrest for driving without a valid license and for possession of a firearm by a prohibited person. Id. Thereafter, the officers applied for and was granted a telephonic search warrant for the vehicle, where they recovered the gun from the center console. Id. Padilla was then transported to and booked at the Las Vegas City Detention Center. Id.

Padilla was found guilty of ownership or possession of firearm by a prohibited person, but after appealing his conviction, it was overturned by the Supreme Court of Nevada. (#40-1). The Court held that Defendants' search of the center console of Padilla's vehicle was an unconstitutional warrantless search. Id.

Padilla since brought suit against Defendants, asserting multiple Fourth, Fifth, Eighth, and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983.[1] Defendants argue they are entitled to summary judgment under res judicata, qualified immunity, and a lack of evidence supporting Padilla's allegations.

II.     Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio

---

[1] On August 31, 2021, this Court affirmed Magistrate Judge Ferenbach's Order (#13) dismissing Plaintiff's Fifth, Eighth, and Fourteenth Amendment (Equal Protection) claims. (#30). The order allowed Plaintiff's Fourth and Fourteenth Amendment (Due Process) claims to proceed. Id.

Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it[.]" Id. at 251. "Where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th Cir. 2016)).

"[Q]uestions of statutory and Constitutional interpretation are questions of law, which may properly be resolved at summary judgment." Washington v. Trump, 441 F.Supp. 1101, 1112 (W.D. Wash. 2020).

III.   Analysis

Padilla's lawsuit is brought pursuant to 42 U.S.C. § 1983 which reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

This statute "provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes." Shafer v. City of Boulder, 896 F. Supp. 2d 915, 927 (2012), see Graham v. Connor, 490 U.S. 386, 393-94 (1989). A plaintiff "must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." West v.

1  Atkins, 487 U.S. 42, 48-49 (1988). Here, Padilla relies on substantive rights conferred by the
2  Fourth, Fifth, Eighth, and Fourteenth Amendments. (#16).

3  Knickerbocker and Reitz argue in response that (1) Padilla cannot rely upon collateral
4  estoppel; (2) they are entitled to qualified immunity; and (3) they did not violate Padilla's
5  constitutional rights.

6  **A. Collateral Estoppel**

7  Defendants argue that collateral estoppel does not apply in this situation and that Padilla
8  cannot use the Nevada Supreme Court's order holding that the search was unreasonable to
9  survive summary judgment in this case. (#75, at 5-7). Defendants assert that because there is no
10 privity between the parties, and the Defendants were narrowly involved in the former case, what
11 was decided by the Court is not relevant here. Id.

12 Res judicata, also known as issue preclusion or collateral estoppel, two related doctrines,
13 exists to "limit to one the number of times a defendant can be vexed by the same claim or issue
14 and [to] promote efficiency in the judicial system by putting an end to litigation." Sierra Pacific
15 Power Co. v. Craigie, 738 F. Supp. 1325, 1327 (D. Nev. 1990) (quoting Gilbert v. Ben-Asher,
16 900 F.2d 1407, 1410 (9th Cir. 1990)).

17 Collateral estoppel holds that "when an issue of ultimate fact has once been determined by a
18 valid and final judgment, the issue cannot again be litigated between the same parties in any
19 future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, (1970). "In determining whether a claim is
20 barred by collateral estoppel, federal district courts must look to state law." Blanch v. LVMPD,
21 No. 2:14-cv-1762-GMN-VCF, 2016 WL 1048012 at *2 (D. Nev. Mar. 10, 2016); Ayers v. City
22 of Richmond, 895 F.2d 1267, 1270 (9th Cir. 1990). In Nevada, collateral estoppel is referred to
23 as "issue preclusion" and requires four elements:

24  (1) the issue decided in the prior litigation must be identical to the
    issue presented in the current action; (2) the initial ruling must have
25  been on the merits and have become final; (3) the party against
    whom the judgment is asserted must have been a party or in privity
26  to the prior litigation; and (4) the issue was actually and necessarily
    litigated.
27

28 Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc., 321 P.3d 912, 916 (Nev. 2014).

The Supreme Court has stated that "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]" Allen v. McCurry, 449 U.S. 411, 415 (1990). The Court also noted that "res judicata principles fully apply to civil rights suits brought under [§ 1983]." Id.

Here, the issue decided in the prior litigation was whether the officer's intrusion into the center console of Padilla's vehicle was an unconstitutional warrantless search. Padilla is arguing that this issue proves that his constitutional rights were violated. Therefore, the first element of issue preclusion is satisfied.

Second, the initial ruling was on the merits of the constitutional claim and has become final. His conviction was reversed by the Nevada Supreme Court. This element is also satisfied.

Third, and where Defendant's argue issue preclusion is implicated, is whether the parties are in privity. The parties to the Nevada Supreme Court decision were Padilla and the State of Nevada so this element can only be satisfied if Padilla and the officers were in privity with the State of Nevada.

"In Nevada, 'a privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties as by inheritance, succession, or purchase.'" Werbicky v. Green Tree Servicing, LLC, No. 2:12-cv-01567-JAD-NJK, 2015 WL 1806857 (D. Nev. April 21, 2015) (quoting Paradise Palsm Cmty. Ass'n v. Paradise Homes, 505 P.2d 596, 599 (Nev. 1973)). "It has also been defined as one 'who is directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment.'" Id. The Nevada Supreme Court has expanded the definition of privy when it adopted the Restatement (Second) of Judgments § 41, which states: "A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party." Alcantara, 321 P.3d, at 917. As "privity does not lend itself to a neat definition, . . . determining privity for preclusion purposes requires a close examination of the facts and circumstances of each case." Mendenhall v. Tassinari, P.3d 364, 369 (2017).

In this case, the State of Nevada litigated the issue as it pertained to Defendants' conduct

regarding Padilla's arrest. The State of Nevada argued that under Michigan v. Long, 463 U.S. 1032 (1983), Reitz's search of Padilla's center console was authorized, and therefore constitutional. See Padilla v. State, 454 P.3d 705 (2019). And although the Nevada Supreme Court held otherwise, Defendants would have been entitled to the benefits of the judgment had the Nevada Supreme Court ruled in favor of the State of Nevada. Therefore, Defendants were essentially being represented by the State, and this representation is sufficient for privity.

Fourth, the issue was actually and necessarily litigated. As the previous case was determined on the merits, it is clear that the constitutionality of Defendants' search was actually and necessarily litigated. See id.

Based on the foregoing, the Court concludes that issue preclusion prevents Defendants from relitigating whether Defendants' intrusion into the center console of Padilla's vehicle was an unconstitutional search.

**B.  Qualified Immunity**

Defendants argue they are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights. (#75, at 14). Defendants further argue that even if a constitutional right was violated, Plaintiff will be unable to show that Defendants violated clearly established law. Id.

"Qualified immunity shields government officials from liability for civil damages unless their conduct 'violated a clearly established constitutional right.'" David v. Kaulukukui, 38 F.4th 792, 799 (9th Cir. 2022). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson v. Callahan, 555 U.S. 223, 244 (2009). In determining whether officers are entitled to qualified immunity, the Court considers (1) whether the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established as of the date of the involved events in light of the specific context of the case. Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014) (quotations omitted). As the Nevada Supreme Court found that Defendants' conduct violated Plaintiff's Fourth Amendment right, the question becomes whether Plaintiff's right was clearly established as of July 26, 2016, the date of the search.

    "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (simplified). "The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." Shooter v. Arizona, 4 F.4th 955, 961 (9th Cir. 2021). "Although there not need be a case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. Here, Plaintiff's response to Defendants' motion failed to cite any existing legal precedent that establishes he had a clearly established Fourth Amendment right. (See #79, at 1-8). And although pro se motions are to be liberally construed, Plaintiff's response fails to address Defendants' "clearly established" argument at all. See Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) ("[I]n general, courts must construe pro se pleadings liberally.") Therefore, Plaintiff has not carried his burden of proof, and Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

    Furthermore, Defendants are also entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim. (See #16). Under Pearson, district courts are allowed to exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. 555 U.S. at 236. Addressing the "clearly established" prong first, the Court again finds that Plaintiff's response failed to cite any existing legal precedent that establishes he had a clearly established Fourteenth Amendment right. (See #79, at 1-8). And again, Plaintiff's response failed to even address Defendants' "clearly established" argument. See id. As such, Plaintiff has not carried his burden of proof.

IV.    Conclusion

    Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#75) is **GRANTED**;

    **IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Summary Judgment (#79) is **DENIED**;

    **IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (#64) is

**DENIED** as moot;

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendants Robert Knickerbocker and Daryl Reitz and against Plaintiff.

DATED this 18th day of October 2023.

Kent J. Dawson
United States District Judge